UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF IDAHO

| | |
|---|---|
| METH LAB CLEANUP LLC, a domestic limited liability corporation, | Case No. 2:10-cv-193-EJL-CWD |
| Plaintiff, | **REPORT AND RECOMMENDATION** |
| v. | |
| SPAULDING DECON, LLC, a foreign limited liability corporation, and LAURA SPAULDING, individually, | |
| Defendants. | |

## <u>REPORT</u>

The present matter is before the Court pursuant to the Motion to Dismiss or, in the alternative, to Transfer Venue, filed by Defendants Spaulding Decon, LLC, and Laura Spaulding (collectively, "Spaulding") on May 13, 2010. (Dkt. 7). The Court granted Plaintiff Meth Lab Cleanup, LLC ("Meth Lab") time to conduct limited discovery, (Dkt. 20), and this matter is now ripe for the Court's review. The Court conducted a hearing on October 19, 2010, during which the parties appeared and presented oral argument. After

**REPORT AND RECOMMENDATION - 1**

careful consideration of the parties' written briefs, evidentiary submissions,[1] and relevant authorities, the Court recommends that dismissal be denied and alternatively, Defendants' motion to transfer venue be granted for the reasons discussed below.

## BACKGROUND

According to the Complaint, Meth Lab, an Idaho limited liability company, provides services that include training, consultation, and evaluation in the areas of decontamination and evaluation of drug lab sites. It applied for registration of "METH LAB CLEANUP" as a service mark in or about September of 2007, and obtained registration of its marks. (Compl. Exs. A, B, C, Dkt. 1.) Meth Lab also maintains a website, and markets its services throughout the United States.

The two companies came in contact when Laura Spaulding, on behalf of Defendant Spaulding Deacon, LLC, a Florida entity, participated in a training course taught by Meth Lab in Denver, Colorado in or about December of 2006. According to the Complaint, Spaulding was required to enter into a non-disclosure and non-circumvent agreement prior to and as a condition of taking the training course. Meth Lab alleges that, after taking the course, Spaulding began using Meth Lab's mark, misappropriated the mark by obtaining a similar domain name, and manipulated Google AdWords and Google Sponsored Links on the internet to drive consumers to Spaulding's website when

---

[1] At the hearing, Spaulding argued that the additional documents Meth Lab submitted on October 11, 2010, after the response deadline (Dkt. 49) should be stricken as untimely. The Court did not consider the additional submissions relevant to its determination in this case, and therefore any error in their submission was harmless. Spaulding's oral motion to strike is denied.

**REPORT AND RECOMMENDATION - 2**

consumers intended to search for Meth Lab. Meth Lab contends also that Spaulding placed written content from its website onto the Spaulding Decon website without permission.

In response to the Complaint, Spaulding on May 13, 2010, filed a motion to dismiss or, in the alternative, to transfer venue. (Dkt. 7.) Spaulding contends that this matter should be dismissed for lack of personal jurisdiction over Defendants because the Court lacks either general or specific jurisdiction. In the alternative, Spaulding argues that the matter should be transferred on the grounds that venue is proper in the United States District Court for the Middle District of Florida, either to cure the defect in venue pursuant to 28 U.S.C. § 1406(a) or 28 U.S.C. § 1631, or for the convenience of the parties under 28 U.S.C. § 1404(a).

Meth Lab does not contest the lack of general jurisdiction, but contends that Spaulding has sufficient contacts with Idaho such that specific jurisdiction is sufficiently established. Meth Lab counters the venue argument upon the grounds that venue is proper in Idaho because this Court has jurisdiction over Defendants, and it is not necessarily more convenient to litigate in Florida rather than in Idaho.

The Court therefore will analyze whether sufficient minimum contacts exist to find that it may exercise specific jurisdiction over Spaulding, or alternatively, whether venue should be transferred to the Middle District of Florida, either to cure the defect in venue because the Court lacks jurisdiction, or for the convenience of the parties. The specific

**REPORT AND RECOMMENDATION - 3**

facts relevant to the Court's analysis will be discussed in the context of the Court's analysis, below.

## ANALYSIS

### 1. Specific Jurisdiction

#### A. *Standard of Review*

In response to a Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction, the plaintiff bears the burden of proof to demonstrate that jurisdiction is appropriate. *Dole Food, Inc. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002). The plaintiff "need only make a prima facie showing of jurisdictional facts." *Sher v. Johnson*, 911 F.2d 1357, 1361 (9th Cir. 1990). The Court must take the plaintiff's uncontroverted allegations as true and conflicts between the parties over statements in affidavits are resolved in the plaintiff's favor. *Dole Food, Inc. v. Watts*, 303 F.3d 1104, 1108 (9th Cir. 2002).

Where, as here, there is no federal statute governing personal jurisdiction, the law of the state in which the Court sits applies. *See Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 800 (9th Cir. 2004). Under Idaho law, a court may exercise jurisdiction over an out-of-state defendant where: (1) the act giving rise to the cause of action falls within Idaho's long-arm statute, and (2) the constitutional standards of due process are met. *Smalley v. Kaiser*, 950 P.2d 1248, 1251 (Idaho 1997). Idaho Code § 5-514(a) permits the Court to exercise jurisdiction over any person or company that transacts business within Idaho or accomplishes or attempts to accomplish, transact or enhance the business purpose or objective of such person or company. Idaho's long-arm

**REPORT AND RECOMMENDATION - 4**

statute permits courts to assert personal jurisdiction to the same extent permitted by the Due Process Clause of the Constitution, and courts are only required to decide whether asserting personal jurisdiction complies with due process under Idaho law. *Lake v. Lake*, 817 F.2d 1416, 1420 (9th Cir. 1987).

Federal due process requires that a nonresident defendant have minimum contacts with the forum state of such a nature that the exercise of personal jurisdiction does not offend traditional notions of fair play and substantial justice. *Int'l Shoe Co. v. Washington*, 326 U.S.310, 316 (1945).  This constitutional test may be satisfied by showing that (1) the defendant has "substantial" or "continuous and systematic" contacts with the forum state, or (2) there is a strong relationship between the defendant's forum contacts and the cause of action. *Decker Coal Co. v. Commonwealth Edison Co.*, 805 F.2d 834, 839 (9th Cir. 1986). The former is known as "general" jurisdiction and the latter as "specific" jurisdiction. *Ziegler v. Indian River County*, 64 F.3d 470, 473 (9th Cir. 1995). Meth Lab did not counter Spaulding's argument that the Court lacks general jurisdiction over the Spaulding Defendants, (*See* Mem. in Opposition at 8, Dkt. 45), and therefore, the Court will proceed to analyze whether it may exercise specific jurisdiction in this case.

### B. *Elements of Specific Jurisdiction*

The Ninth Circuit uses the following three-factor test to determine whether a court has specific jurisdiction over a nonresident defendant: "(1) the nonresident defendant must do some act or consummate some transaction with the forum state or perform some act by which it purposefully avails itself of the privilege of conducting activities in the forum state, thereby invoking the benefits and protection of its laws; (2) the claim must arise out of or result from the defendant's forum-related activity; and (3) the exercise of jurisdiction must be reasonable." *Ochoa v. J.B. Martin & Sons Farms, Inc.*, 287 F.3d 1182, 1188-89 (9th Cir. 2002) (citing *Brand v. Menelove Dodge*, 796 F.2d 1070, 1073 (9th Cir. 1986)).

Generally, specific jurisdiction cannot be established unless the plaintiff meets its burden of satisfying both the purposeful availment and the arising out of requirements. *Schwarzenegger*, 374 F.3d at 802. If the plaintiff satisfies both requirements, the burden shifts to the defendant to show that the court's exercise of jurisdiction would not be reasonable. *Id*. But, if the plaintiff cannot establish purposeful availment, the jurisdictional inquiry ends and the case must be dismissed. *Boschetto v. Hansing*, 539 F.3d 1011, 1016 (9th Cir. 2008). The Ninth Circuit has taken a flexible approach in determining specific jurisdiction by holding that it "can be established with a lesser showing of minimum contacts where considerations of reasonableness dictate." *Ochoa*, 287 F.3d at 1189 n.2 (citing *Haisten v. Grass Valley Med. Reimbursement Fund, Ltd.*, 784 F.2d 1392, 1397 (9th Cir. 1986)).

**REPORT AND RECOMMENDATION - 6**

### C. *Purposeful Availment and Direction*

Although courts generally use the phrase "purposeful availment" to include both purposeful availment and direction, the Ninth Circuit recognizes availment and direction as two distinct concepts. *Schwarzenegger*, 374 F.3d at 802. *See also Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 473 (1985) (stating that for contractual relationships, parties who "'reach out beyond one state and create continuing relationships and obligations with citizens of another state are subject to regulation and sanctions in the other State for the consequences of their activities"). A purposeful availment analysis is "most often used in suits sounding in contract," *Boschetto*, 539 F.3d at 1016, while a purposeful direction analysis is generally used in suits sounding in tort, *Menken v. Emm*, 503 F.3d 1050, 1057 (9th Cir. 2007). In this case, there are both contractual claims and tort claims, and therefore the Court will examine both availment and direction.

#### (1) *Availment*

Meth Lab alleges a contractual basis for finding specific jurisdiction based upon three transactions, the first being the training course and the second two consisting of two invoices billed to Meth Lab by Spaulding for services it performed on Meth Lab's behalf. Spaulding Decon, LLC, via Ms. Spaulding, contracted with Meth Lab over the Internet and by telephone to register and pay for Meth Lab's training course, which was taught in Colorado in 2006. Later, the parties had conversations about forming a business relationship such that Spaulding would provide subcontracted services to Meth Lab. It appears that Spaulding provided subcontracted services to Meth Lab on two occasions

**REPORT AND RECOMMENDATION - 7**

according to two invoices for $700 each, in or about December 12, 2007. (Dkt. 45-2; Depo. of Spaulding at 62, Dkt. 46-1.) The services Spaulding provided to Meth Lab were for the assessment of adjacent condominiums in Orlando, Florida. (Depo. of Spaulding at 52–53, Dkt. 46-1.) Thereafter, Spaulding provided no further subcontracted services to Meth Lab.

The formation of a contract with a nonresident defendant "is not, standing alone, sufficient to create jurisdiction." *Boschetto*, 539 F.3d at 1017. But a long-standing working relationship between two corporations may constitute sufficient contact with Idaho such that the purposeful availment prong of the specific jurisdiction test was satisfied. *Albertson's LLC v. Kleen-Sweep Janitorial Co., Inc.*, No. CV 09-263-S-BLW, 2009 WL 3786290 (D. Idaho Nov. 9, 2009). In *Albertson's*, the two companies entered into a contract in 2003 whereby Kleen-Sweep, a Tennessee corporation, would provide janitorial services to Albertson's, an Idaho corporation, at its stores in Florida.  The Court found the following factors important in finding Idaho could assert specific jurisdiction over Kleen-Sweep: the terms of the agreement created a continuing obligation rather than the sale of a single item; Kleen-Sweep sent invoices and all communications to Idaho; and performance reviews occurred each year in Idaho. *Albertson's, LLC*, 2009 WL 3786290 at *4–5.  *See also Burger King*, 471 U.S. at 475-76 (explaining that there is a sliding scale, with random and attenuated contacts at one end, versus those actions which deliberately create a substantial connection or continuing obligations in the forum state).

**REPORT AND RECOMMENDATION - 8**

In contrast, Meth Lab and Spaulding did not have a continuing obligation to do business with each other. The three discrete transactions for the provision of goods and services is insufficient in this case to create a substantial connection with Idaho. *See Boschetto*, 539 F.3d at 1017 ("[A] contract for the sale of a good is insufficient to have created a substantial connection" with the chosen forum). Performance of the contracts created no continuing obligation, nor did performance of the contracts require Spaulding to engage in any substantial business in Idaho.

Meth Lab alternatively argued that Spaulding's assertion that it claimed a license to use the content and materials found on Meth Lab's website constitutes sufficient evidence of a continuing business relationship. However, under the jurisdictional test, the plaintiff bears the burden of demonstrating jurisdictional facts, and uncontroverted allegations in the complaint are taken as true. *Love v. Assoc. Newspapers, Ltd.*, 611 F.3d 601, 608 (9th Cir. 2010). Conflicts over statements contained in affidavits are resolved in favor of the plaintiff. *Love*, 611 F.3d at 608.

In light of the foregoing, Meth Lab's argument fails. Meth Lab denies that it granted Spaulding a continuing license to use content on its website, as it alleges infringement of that content. (*See* Compl. Dkt. 1.) For the Court to accept Meth Lab's argument, Meth Lab would have to admit the existence of the license it denies granting to Spaulding. Meth Lab therefore cannot rely upon Spaulding's assertion to the contrary as a basis for finding jurisdiction.

**REPORT AND RECOMMENDATION - 9**

2. *Direction*

Turning to the acts of infringement alleged by Meth Lab, such an action sounds in tort and is more properly analyzed under the purposeful direction standard rather than the purposeful availment standard. Meth Lab asserts two arguments that Spaulding's activities were directed at Idaho, based first upon the interactivity of Spaulding's website, and second that acts of infringement occurred on Spaulding's website, which resulted in harm to an Idaho resident.

To establish purposeful direction, Meth Lab must present evidence that Spaulding's actions outside the forum were directed at the forum. *Schwarzenegger*, 374 F.3d at 803. The Ninth Circuit evaluates purposeful direction under the Supreme Court's three-part *Calder* test, which "requires that the defendant allegedly have (1) committed an intentional act, (2) expressly aimed at the forum state, (3) causing harm that the defendant knows is likely to be suffered in the forum state." *Id.* (citing *Dole Food Co. v. Watts*, 303 F.3d 1101, 1111 (9th Cir. 2002)). *See also Calder v. Jones*, 465 U.S. 783, 789-90 (1984).

Meth Lab argues that Spaulding's use of the Internet to promote her services on a "nationwide" basis subjects her to jurisdiction in Idaho. Spaulding's website advertises a newsletter and allows for online payments and requests for services, which presumably could come from anywhere. Spaulding also maintains a Facebook page, advertising its services nationwide. Spaulding uses toll free telephone and facsimile lines, and the Internet, to conduct its business. (Depo. of Spaulding at 19, 20, 29, 25–27, 48, 52–55, 58–66, 81, 90, 115, Dkt. 46-1.) Meth Lab therefore argues that Spaulding's Internet

website is "interactive" and promotes Spaulding's services nationwide, subjecting

Spaulding to jurisdiction in Idaho.

When evaluating Internet activity, the common thread is that "the likelihood that

personal jurisdiction can be constitutionally exercised is directly proportionate to the

nature and quality of commercial activity that an entity conducts over the Internet."

*Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 419 (9th Cir. 1997) (quoting *Zippo Mfg.*

*Co. v. Zippo Dot Com, Inc.*, 952 F.Supp. 1119, 1124 (W.D.Pa. 1997)). But an Internet

advertisement alone is not sufficient to subject the advertiser to jurisdiction in the

plaintiff's home state. *Cybersell, Inc.*, 130 F.3d at 418. Generally, something more is

required to indicate that the defendant purposefully directed her activity in a substantial

way to the forum state. *Cybersell, Inc.*, 130 F.3d at 418.

In one example where Internet activity alone was found sufficient, the business

operated an "interactive" website whereby the website acted as a distribution center to

market software that was generated and distributed to subscribers located anywhere in the

nation pursuant to a "shareware agreement" entered into with each recipient.

*CompuServe, Inc. v. Patterson*, 89 F.3d 1257 (6th Cir. 1996), *cited by Cybersell, Inc.*, 130

F.3d at 417. In *CompuServe*, the internet user, located in Texase, actually exchanged

information with CompuServe's host computer located in Ohio, entered into an

agreement to sell software over the Internet, advertised through the service, and sent

software to the service in Ohio. *Id.* CompuServe sued the Texas subscriber in Ohio. The

Sixth Circuit Court of Appeals reversed the district court's decision, finding that

**REPORT AND RECOMMENDATION - 11**

CompuServe made a prima facie showing that the defendant's contacts with Ohio were sufficient to support the exercise of personal jurisdiction because the individual purposefully availed himself of the benefits of doing business in CompuServe's home state. *CompuServe, Inc.*, 89 F.3d at 1268.

At the other end of the spectrum are passive Internet websites, which simply post information and permit anyone who can find the website to access it. *Cybersell, Inc.*, 130 F.3d at 417. In such a case, the website may require no authentication or access code, be accessible to anyone with Internet access, and contain general information about the business. *See Bensusan Restaurant Corp. v. King*, 937 F.Supp.295, 297 (S.D.N.Y. 1996).

In *Bensusan*, a New York club alleged that King, the operator of a club in Missouri which maintained a website, was infringing upon its marks. The plaintiff alleged that King's Internet website subjected it to jurisdiction in New York. The website contained general information about the club, showtimes, and a telephone number for ticket orders. If a consumer wished to attend a show, the individual was required to call the club in Missouri, pay for the tickets, and pick them up in Missouri. *Bensusan*, 937 F.Supp. at 299. In that case, the court held that the defendant was not subject to jurisdiction in New York even though the website was accessible to New York residents. *Bensusan*, 937 F.Supp. at 300.

The facts of this case are more akin to the passive website in *Bensusan*. Although Spaulding advertises "nationwide" services on its website, there is no evidence that Spaulding actually has provided goods or services in Idaho, deliberately directed any

**REPORT AND RECOMMENDATION - 12**

activity at Idaho, or caused any activity to occur in Idaho. Spaulding advertises a newsletter, and subscribers presumably can subscribe to a newsletter, but the evidence before the Court indicates that Spaulding never has published a newsletter. (Depo. of Spaulding at 30, Dkt. 46-1) ("there is no newsletter.") And it appears that the newsletter is a mere "passive" provision of information that does not require a paid subscription.

Spaulding accepts credit card payments over its Internet website, but again, the evidence before the Court indicates that Spaulding never has received any payments via its website. (Depo. of Spaulding at 45, Dkt. 46-1.)[2] While Spaulding may seek to promote its services "nationwide," the evidence indicates Spaulding directs no "targeted" effort to actually advertise its services to specific locales beyond its website, which can be accessed by anyone anywhere. Spaulding, although admitting to advertising on its website the provision of "nationwide" services, has never actually performed any services in Idaho, or even, it appears, outside of Florida. (Depo. of Spaulding at 18–19, 28–29, Dkt. 46-1.) There is no proof, beyond the statement made on Spaulding's website, that any services were provided to Idaho residents or caused by Spaulding to occur in Idaho.[3]

---

[2] In her deposition, when asked about whether or not Spaulding had received any payments from Idaho residents over the Internet, Ms. Spaulding answered that Spaulding had "never received any payments on it." (Depo. of Spaulding at 45, Dkt. 46-1.)

[3] Even assuming Spaulding contracted with an Idaho company, the nature of the Spaulding's business suggests a "one-time" use. To obtain services, the Idaho company would need to request the services via the Internet, and either Spaulding or a subcontractor would provide those services. After that interaction, the contract would be completed. There would therefore be no ongoing business relationship once the contract was performed.

**REPORT AND RECOMMENDATION - 13**

Meth Lab's reliance upon *Brayton Purcell LLP v. Recordon & Recordon*, 606 F.3d 1124 (9th Cir. 2010), which it cited at the hearing to bolster its argument that the copying of its website by Spaulding subjects Spaulding to jurisdiction in Idaho, is unavailing. In *Brayton*, a Southern California law firm based in San Diego allegedly copied the contents of a Northern California law firm based in Novato. The plaintiff sued the defendant in the Northern District of California. The Ninth Circuit Court of Appeals upheld the district court's denial of the defendant's motion to transfer venue, because the defendant's wrongful conduct—copying of the website—placed the defendant in direct competition with a known competitor in Northern California offering the same services in the exclusive field of elder law. *Brayton*, 606 F.3d at 1130. The defendant's conduct was expressly aimed at capturing market share in the field of elder law in direct competition with the plaintiff. *Brayton*, 606 F.3d at 1130–31.

*Brayton* is limited to its facts. In *Love v. Assoc. Newspapers, Ltd.*, 611 F.3d 601 (9th Cir. 2010), the court noted that *Brayton* did hold that the "'expressly aimed' prong of the purposeful direction test can be met where a plaintiff alleges that the defendant individually targeted him by misusing his intellectual property on the defendant's website for the purpose of competing with the plaintiff in the forum." *Love*, 611 F.3d at 609 n.4. But the court contrasted the facts in *Brayton*, noting that the two parties in *Brayton* were each residents of the same state, and the defendant intentionally targeted the plaintiff's business in that state. *Id*. In addition, the court limited its holding further by stating that it "merely held that the defendant's 'conclusory denial' that its actions were not aimed at

**REPORT AND RECOMMENDATION - 14**

prospective clients in Northern California did 'not rebut' the plaintiff's fact-based

allegation to the contrary." *Id.*

In contrast to *Brayton* and akin to *Love*, the parties here are from two different

forums—Idaho and Florida, respectively. Moreover, as discussed above, although Meth

Lab claims that Spaulding intentionally targets its business in Idaho, it did not present

facts at all, simply assertions, that Spaulding's website and claims of nationwide service,

"aimed" its activities at Idaho and harmed an Idaho resident. But the mere fact that

resulting harm from the alleged confusion over the contents of the parties' websites may

be incurred by an Idaho company is not sufficient to show that Spaulding "directed" its

conduct toward Idaho. And Spaulding provided fact-based allegations to rebut MethLab's

conclusory statements, showing that even though its website claimed it provided

"nationwide" service, Spaulding did not advertise in Idaho; did not actually provide

services to Idaho residents; did not send newsletters to Idaho residents; and did not accept

payments from Idaho residents. In other words, Spaulding did not actually direct or

conduct activities in Idaho, and only claimed it could.

Meth Lab next argues that Spaulding's alleged acts of infringement occurred on

Spaulding's website, which is accessible in Idaho, thereby supporting jurisdiction in

Idaho. (Mem. in Opposition at 5, Dkt. 45.) Meth Lab cites to the fact that the infringing

material was taken from an Idaho company, that the mark used was a trademark

developed in Idaho, and that Spaulding's actions caused harm to Meth Lab in Idaho. But,

similar to the analysis in *Bensusan*, the "infringing" activity occurred in Florida, when

**REPORT AND RECOMMENDATION - 15**

Spaulding posted the material to its website. The "mere fact that a person can gain information on the allegedly infringing product is not the equivalent of a person advertising, promoting, selling or otherwise making an effort to target its product" in Idaho. *Bensusan*, 937 F.Supp. at 299. There is no evidence that Spaulding actively promotes its services in Idaho other than its bare assertion that it can provide services "nationwide." And the mere fact that Spaulding may have known Meth Lab was located in Idaho is nothing more than an allegation, as in *Bensusan*, of an indirect financial loss resulting from the fact that Meth Lab is located in Idaho, which is not the equivalent of an allegation of significant harm likely to be suffered in the forum state.[4]

Therefore, the Court finds that Spaulding did not purposefully avail itself of the privilege of conducting activities in Idaho, or purposefully direct its actions toward Idaho. Having found that Meth Lab has not satisfied the first part of the test, the Court need not

---

[4] The Court finds *Tech Heads, Inc. v. Desktop Serv. Center, Inc*., 105 F.Supp.2d 1142 (D. Or.. 2000), cited by Meth Lab at the hearing, distinguishable. In that case, the court found the defendant to have a highly interactive website, because it accepted resumes over the Internet from candidates seeking relocation to the defendant's home state of Virginia, actually accepted a resume from an Oregon resident, and advertised in nationally circulated newspapers found in Oregon. *Tech Heads, Inc.*, 105 F.Supp.2d at 1150–51. Although the quantity of the contacts in Oregon was small, consisting of one contact, the court found the quality of the contact sufficient to establish jurisdiction in Oregon. *Id.* The defendant, by accepting a resume from the Oregon resident, was obligating itself to find employment for that individual in Virginia. *Id*. at 1150. In contrast, although Spaulding possesses a toll-free number and has the ability to accept contracts for cleanup services in states other than Florida, there is no evidence of any actual contact with Idaho. Spaulding's website is not "interactive" in the same way, as a request for services in another state are submitted via Spaulding's website, but nothing is "posted," like the resume in *Tech Heads*, to the site or via the site. Finally, other than Spaulding's Internet site, Meth Lab has not shown that Spaulding advertises in any other national medium actually found in Idaho. The quality of the contacts are therefore distinguishable, and not accompanied by any actual conduct directed at Idaho.

**REPORT AND RECOMMENDATION - 16**

proceed further to discuss either the "arising out of" requirement or the "reasonableness" requirement. *Boschetto*, 539 F.3d at 1016.

At the hearing, Spaulding requested entry of an order of dismissal with prejudice. However, Spaulding contends also that transfer may be appropriate if the Court chooses not to dismiss this action. The Court recommends, as discussed below, that transfer is appropriate under 28 U.S.C. § 1406(a).

## 2. Motion to Transfer Venue Under 28 U.S.C. § 1406(a) or 28 U.S.C. § 1631

A complaint may be dismissed for improper venue pursuant to Fed. R. Civ. P. 12(b)(3).[5] Meth Lab bears the burden of showing that venue is proper in the District of Idaho. *Piedmont Label Co. v. Sun Garden Packing Co.*, 598 F.2d 491, 496 (9th Cir. 1979). There is a strong presumption in favor of the plaintiff's choice of forum. *Ravelo Monegro v. Rosa*, 211 F.3d 509, 513 (9th Cir. 2000). In the context of a Rule 12(b)(3) motion, the pleadings need not be accepted as true and the court may consider facts outside of the pleadings. *Murphy v. Schneider Nat'l, Inc.*, 362 F.3d 1133, 1137 (9th Cir. 2004). The court must accept as true all uncontroverted allegations in the plaintiff's complaint, and conflicts between the facts contained in the parties' affidavits must be resolved in the plaintiff's favor. *Brayton Purcell LLP v. Recordon & Recordon*, 575 F.3d 981, 985 (9th Cir. 2009).

---

[5] Spaulding did not assert Rule 12(b)(3) as a basis for dismissal, but because Spaulding argues generally that the matter should be dismissed either for improper jurisdiction or improper venue, Rule 12(b)(3) would be the grounds upon which dismissal for improper venue would be brought.

**REPORT AND RECOMMENDATION - 17**

Under federal law, a civil action where jurisdiction is not founded solely on diversity of citizenship[6] may be brought only in:

> (1) a judicial district where any defendant resides, if all defendants reside in the same State,
> (2) a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated, or
> (3) a judicial district in which any defendant may be found, if there is no district in which the action may otherwise be brought.

28 U.S.C. § 1391(b).  For purposes of venue under section 1391, a corporate defendant is deemed to reside in "any judicial district in which it is subject to personal jurisdiction at the time the action is commenced."  28 U.S.C. § 1391(c).  For venue to be proper in the District of Idaho, any one of the three circumstances set forth in § 1391(b) must apply. Because the Court found that the Spaulding Defendants are not subject to personal jurisdiction in Idaho, the only remaining ground upon which venue would be proper is under § 1391(b)(2).  For venue to be proper within this District pursuant to § 1391(a)(2), a "substantial part" of the events giving rise to this suit must have occurred in Idaho.

The fact that a substantial portion of activities and events occurred elsewhere does not disqualify Idaho as a proper venue as long as substantial activities took place in Idaho as well.  *Masterson v. Swan Range Log Homes, LLC*, No. CV 06-163-S-EJL, 2007 WL 625387 *2 (D. Idaho Feb. 23, 2007). The chosen venue need not be the best venue, but

---

[6] Although Met Lab asserts diversity of citizenship as a basis for jurisdiction, Meth Lab does aver two federal causes of action under 15 U.S.C. § 1125(a) and 15 U.S.C. § 1114 for trademark misappropriation and infringement, respectively.  Therefore, diversity is not the sole basis for jurisdiction, and 28 U.S.C. § 1391(b) is applicable as opposed to 28 U.S.C. § 1391(a).

**REPORT AND RECOMMENDATION - 18**

only a qualifying venue. *Masterson*, 2007 WL 625387 at *2 (citing *Merchants Nat'l Bank v. Safrabank*, 776 F.Supp. 538, 541 (D.Kan.1991). It is not necessary for the plaintiff to show that a majority of events giving rise to the action occurred in Idaho, but only that a substantial part of the events took place here. *Masterson*, 2007 WL 625387 at *2 (citing *Pasulka v. Sykes*, 131 F.Supp.2d 988, 994 (N.D.Ill.2001)).

In contract cases, courts look to various factors to inform their decision about whether events are "substantial." These factors include the locations where negotiations and execution of the contract occurred, the place where the contract was intended to be performed, and the place where the alleged breach occurred. *Gulf Ins. Co. v. Glassbrenner*, 417 F.3d 353, 357 (2d Cir.2005); *see also Shropshire v. Fred Rappoport Co.*, 294 F.Supp.2d 1085, 1094 (N.D.Cal. 2003) (finding venue proper where some of the negotiations on the agreement were conducted within the district, the agreement was signed within the district, and a substantial portion of the performance under the Agreement also occurred in the district). Moreover, courts have considered letters, faxes, emails, and telephone calls transmitted from or received in a district during negotiation and execution of a contract to be substantial events for venue purposes. *Kirkpatrick v. Rays Group*, 71 F.Supp.2d 204, 213 (D.C.N.Y.1999).

In this case, the only contract allegedly breached is a non-disclosure and non-circumvent agreement Meth Lab required Spaulding to execute as a condition to taking the Meth Lab training course. Meth Lab conducted the training course in Denver. Even assuming the contract was executed in Idaho, the alleged breach—the use of Meth Lab's

**REPORT AND RECOMMENDATION - 19**

proprietary materials and website content—occurred when Spaulding employees located in Florida updated the Spaulding website to include the proprietary material.  While Meth Lab may be given the benefit of the Court's assumption at this stage that the contract was executed in Idaho, the remaining factors do not support venue in Idaho. The nature of the contract indicates performance of or compliance with the contract would be performed in Florida, and the breach would have occurred in Florida when Spaulding updated its website.

The remaining allegations are tort claims for misappropriation, unfair competition, and trademark infringement and dilution.  Spaulding argues that no substantial event occurred in Idaho, and this Court agrees. The events giving rise to Meth Lab's causes of action for copyright and trademark infringement arose when Spaulding, who maintains a business office in Florida and a website updated and maintained by individuals located in Florida, posted allegedly infringing material on its website. Spaulding obtained the material from a website maintained by Meth Lab, an Idaho company. But the conduct complained of—the alleged act of infringement—occurred in Florida. The fact that the website can disseminate the allegedly infringing material to others is not a relevant factor. If the Court were to accept Meth Lab's argument, then taking it to its logical conclusion would mean mere Internet distribution, without "something more," renders the act of infringement world-wide, thus possibly subjecting Meth Lab to suit anywhere in the world. *See Cybersell, Inc.*, 130 F.3d at 418 (requiring more than just mere advertising on the Internet to establish direction of activity to the forum).

**REPORT AND RECOMMENDATION - 20**

Therefore, despite the alleged contacts between Spaulding and Meth Lab, when examining the conduct at issue in the Complaint, individuals in Florida performed the allegedly infringing acts. Based on the foregoing, the Court disagrees that a substantial portion of the events or omissions giving rise to Meth Lab's claims occurred in Idaho, and therefore finds that venue is not proper in Idaho.

Spaulding contends, however, that an alternative to dismissal is transfer of venue to Florida pursuant to 28 U.S.C. § 1406(a) and/or 28 U.S.C. § 1631. 28 U.S.C. § 1406(a) permits the court to dismiss an action filed in the wrong district or, in the interest of justice, transfer the action to any district in which it could have been brought.  28 U.S.C. § 1631 provides an additional basis to transfer a case to a court in which the matter could have been brought at the time it was filed if the court finds that it lacks jurisdiction.

Meth Lab did not argue that the Middle District of Florida was an improper venue. Pursuant to 28 U.S.C. § 1391(b), the matter could have been brought in the Middle District of Florida, since Spaulding resides there. Because the Court determined that jurisdiction is not proper in Idaho and that venue is not proper in this district, but otherwise finds that Meth Lab has stated a claim for relief under Fed. R. Civ. P. 8(a), the Court in the exercise of its discretion recommends that venue be transferred to the United States District Court for the Middle District of Florida.[7]

---

[7] Spaulding claimed also that transfer of venue would be appropriate for the convenience of the parties under 28 U.S.C. § 1404(a). Because the Court recommends transfer under 28 U.S.C. § 1406(a) and/or 28 U.S.C. § 1631, the Court does not reach the issue of transfer of venue under 28 U.S.C. § 1404(a). However, the Court notes for the record that Spaulding has sued Meth Lab in Florida state court. (Decl. of Mazzoli Ex. D, Dkt. 10-5.) In a decision rejecting Meth Lab's bid to remove the action to

## CONCLUSION

Based upon the foregoing, the Court recommends that Defendants' Motion to Dismiss be denied and that its alternate request to transfer venue be granted, resulting in a transfer of this matter to the United States District Court for the Middle District of Florida.[8]

---

federal court, District Judge Merryday noted that Meth Lab's allegations of trademark and copyright infringement asserted in support of removal were, "[a]t most," allegations "anticipating a federal defense to the plaintiff's claims of breach of contract and tortious interference." (Decl. of Mazzoli Ex. D at 3, Dkt. 10-5.) The reference raised to the federal defenses to the state court action appear to fit the claims made in this case.

[8] At the hearing, Spaulding requested dismissal with prejudice, as well as an award of costs and attorney fees for having to bring its motion. The Court, however, declines to consider Spaulding's request, as it finds the request inconsistent with the alternative argument that venue would be proper in the United States District Court for the Middle District of Florida, and with the Court's recommendation to transfer venue. Moreover, the Court was not presented with evidence that Meth Lab's decision to file suit in Idaho was brought for an improper purpose such that attorney fees should be awarded.

**REPORT AND RECOMMENDATION - 22**

## <u>RECOMMENDATION</u>

**NOW THEREFORE IT IS HEREBY RECOMMENDED:**

1)  Defendants' Motion to Dismiss or, in the Alternative, to Transfer Venue, (Dkt.

7) be **GRANTED IN PART AND DENIED IN PART**.

The Court recommends that this matter be transferred to the United States District

Court for the Middle District of Florida.

Written objections to this Report and Recommendation must be filed within

fourteen (14) days pursuant to 28 U.S.C. § 636(b)(1) and Dist. Idaho L. Rule 72.1(b), or

as a result of failing to do so, that party may waive the right to raise factual and/or legal

objections to the United States Court of Appeals for the Ninth Circuit.



DATED: October 25, 2010

_____
Honorable Candy W. Dale
Chief United States Magistrate Judge

**REPORT AND RECOMMENDATION - 23**